IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



IN RE:

WHOLE FOODS MARKET, INC.,　　　　　　　　　　　Case No. A-14-MC-2588-SS
GREEK YOGURT MARKETING　　　　　　　　　　　　[MDL. NO. 2588]
AND SALES PRACTICES LITIGATION

THIS DOCUMENT RELATES TO ALL CASES.

_____

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs' Second Amended Consolidated Complaint (SACC) [#29], Defendant Whole Foods Market, Inc.'s Motion to Dismiss [#31];[1] Defendants' Motion to Dismiss [#32]; Plaintiffs' Response [#41] thereto; and Defendants' Reply [#46] in support. Having reviewed the pleadings, the briefing of the parties, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

**Background**

This Multidistrict Litigation (MDL) involves eleven putative class action lawsuits against various Whole Foods Market corporate entities[2] and Skotidakis, Inc. (collectively, Defendants) based

---

[1] By joint stipulation made pursuant to Rule 41(a)(1)(A)(ii), Plaintiffs agree to dismiss all claims against Whole Foods Market Inc. (WFMI) without prejudice and WFMI agrees to toll the applicable statute of limitations through the time the Court issues an initial class certification order. *See* Joint Stip. [#43]. Consequently, all claims in against WFMI in the SACC are DISMISSED WITHOUT PREJUDICE pursuant to the joint stipulation. *Id.*

[2] These Defendants include Whole Foods Market Group, Inc., WFM Private Label, L.P., Whole Foods Market Rocky Mountain/Southwest, L.P., Whole Foods Market California, Inc., WFM-WO, Inc., and Mrs. Gooch's Natural Foods Markets, Inc. SACC [#29] ¶¶ 24-29.

-1-



on an alleged misrepresentation of the amount of sugar in store-brand Whole Foods 365 Everyday Value Plain Greek Yogurt (Yogurt). Plaintiffs are eighteen individuals who sue in their individual capacities and on behalf of a putative national consumer class and ten putative state subclasses comprised of consumers in Arizona, California, Florida, Illinois, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Texas. Plaintiffs bring claims for violations of various state consumer protection and unfair competition statutes as well as claims for breach of warranty, unjust enrichment, negligent misrepresentation, and for other equitable remedies. Defendants now move to dismiss all claims against them with prejudice pursuant to Rule 12(b)(6). The motion is ripe for consideration.

I.      **Factual Allegations**

The Whole Foods entities own and operate Whole Foods Market grocery stores, in which they sell a line of Whole Foods branded products marketed as a healthier alternative to other brands. Plaintiffs allege WFM Private Label, L.P., contracted with a third-party manufacturer, Defendant Skotidakis, Inc., to produce the Yogurt for sale as a "store-brand" product to be sold at Whole Foods Market grocery stores across the country. The Yogurt was sold in 0% milkfat and 2% milkfat versions.

According to the nutrition facts label on the back of the product, the Yogurt contains 2 grams of sugar per one cup serving. Plaintiffs claim this statement was false. According to six tests conducted by *Consumer Reports* magazine,[3] the Yogurt actually contained 11.4 grams of sugar per

---

[3] Defendants have attached a copy of the *Consumer Reports* article publishing the results of these tests as well as copies of the challenged Yogurt labels, which they ask the Court to consider for purposes of their motion. *See* Mot. Dismiss [#32-2] (Request for Judicial Notice) at 2–3. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (internal quotation marks omitted). Because the *Consumer Reports* article and the Yogurt labels are referenced repeatedly in the SACC and are clearly central to Plaintiffs' claims, the Court finds they should be considered part of the pleadings.

serving—nearly six times the stated amount. Plaintiffs rely solely on the testing conducted by *Consumer Reports* and do not allege they have conducted any independent laboratory testing of the Yogurt to corroborate *Consumer Reports*' conclusions. Further, Plaintiffs do not allege which of the two versions of the Yogurt *Consumer Reports* tested.

The claimed amount of sugar was much lower than that of competitor's brands, which generally ranged between five and ten grams of sugar per serving. Plaintiffs allege Defendants were aware the nutritional information on the Yogurt was false, but marketed and sold the product anyway in order to obtain a competitive advantage in the market. Plaintiffs further allege Defendants sold the Yogurt at a higher price than they would have had they labeled the sugar content accurately. Consequently, Plaintiffs claim they were harmed by the alleged misrepresentation because they chose to purchase the Yogurt at least in part based on its low sugar content, and that they paid more for the Yogurt than they would have had the label been truthful. Plaintiffs also allege they relied on Defendants' representation in purchasing the Yogurt and that they would not have purchased the Yogurt if they had known it actually contained more than 2 grams of sugar per serving.

## II. Procedural History

On December 12, 2014, the Judicial Panel for Multidistrict Litigation (JPML) centralized four of the eleven member cases in this Court pursuant to 28 U.S.C. § 1407 for purposes of coordinated pretrial proceedings. *See* Transfer Order [#1]. The remaining seven member cases were filed or received by this Court on or before April 7, 2015. *See* April 6, 2015 Transfer Order [#4]. After the Court denied remand to state court in two member cases, Plaintiffs collectively filed the SACC, which is the operative pleading for purposes of the Defendants' motion.

Plaintiffs bring claims against Defendants for violations of various state consumer protection and unfair competition statutes[4] as well as claims for breach of express and implied warranty, unjust enrichment, negligent misrepresentation, and for declaratory and injunctive relief. Plaintiffs seek to represent a national class of all consumers who purchased the Yogurt on or after August 1, 2010. Plaintiffs also seek to represent a number of state subclasses that include all consumers who purchased the Yogurt in Arizona, California, Florida, Illinois, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Texas on or after certain dates ranging from August 6, 2008 to October 10, 2012, depending on the subclass.

Defendants now ask the Court to dismiss the entirety of the SACC with prejudice on the grounds Plaintiffs' claims are preempted by federal law, fail to state a plausible theory of causation, reliance, or injury, and fail to plead their fraud claims with the particularity required by Rule 9(b). With regard to the equitable claims, Defendants argue Plaintiffs lack standing to seek injunctive relief and their request for declaratory relief should be denied because the issues will be decided in the context of other claims. Finally, Defendants raise additional independent reasons Plaintiffs are not entitled to relief on their warranty, unjust enrichment, and state consumer protection claims.

---

[4] The state subclass claims include violations of the following statutes: Arizona Consumer Fraud Act, ARIZ. REV. STAT. ANN. § 44-1522; California Consumers Legal Remedies Act, CAL. CIV. CODE § 1750; California Unfair Competition Law, CAL. BUS. & PROF'L CODE § 17200; California False Advertising Law, CAL. BUS. & PROF'L CODE § 17500; Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1; Massachusetts Consumer Protection Act, Mass. Gen. Laws, ch. 93A; Mass. Gen. Laws, ch. 266 § 91; Mass Gen. Laws, ch. 94 §§ 1887 and 190 and 105 CMR 590.001; New Jersey Truth in Consumer Contract Warranty, and Notice Act, N.J.S.A. § 56:12-15; New York General Business Law § 349; New York General Business Law § 350; Pennsylvania Unfair Trade Practices Act, 73 PA. CONS. STAT. § 201-1; TEXAS BUS. & COMM. CODE § 17.41; and Missouri Merchandising Practices Act, MO. REV. STAT. § 407.020.43. SACC ¶¶ 88–285. The national class allege a single claim for relief on "other states'" consumer protection statutes against two of Defendants: WFM Private Label, L.P. and Whole Foods Market Group, Inc. *Id.* ¶¶ 285–91.

Analysis

I.   Applicable Law

A.   Law Applicable in Multidistrict Litigation

Each of the eleven member cases have been transferred to this forum by the JPML pursuant to 28 U.S.C. § 1407. Sitting as an MDL transferee court, the Court must apply the law of its own circuit when analyzing questions of federal law. *See, e.g., Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)). For example, because pleading standards are matters of federal law, the Court must look to and apply the law of the Fifth Circuit for purposes of Federal Rules of Civil Procedure 12(b).

There is no dispute that each of Plaintiffs' various claims for relief arise under state law, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and as to matters of state law, the Court must apply the law of the transferor forum. *See Hildebrandt v. Indianapolis Life Ins. Co.*, No. 3:08-cv-1815-B, 2009 WL 804123, at *2 (N.D. Tex. Mar. 26, 2009) (citing 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3866 (2007)). Thus, the Court must apply the state law choice-of-law rules that each transferor court would have applied in order to determine which state's substantive law governs each Plaintiff's claims. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 791 (S.D. Tex. 2005). Because this is a diversity case, each transferor forum would have applied the choice-of-law principles of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, the various cases transferred as part of this multidistrict litigation were brought in Arizona, California, Florida, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Texas. Consequently, the Court must apply the conflicts rules of each of these states.

As the parties apparently agree,[5] there is marked uniformity among these states' choice of law rules for purposes of putative class-action consumer-protection claims. Courts applying the transferor forums' state choice-of-law rules have held that the law of the state where each plaintiff resides and purchased the product should govern.[6] This makes sense, as Plaintiffs were allegedly harmed in the states where the transactions occurred and these states maintain a strong interest in enforcing their own laws and protecting consumers from in-state injuries caused by foreign corporations. However, the Court reserves the right to revisit this fact-laden inquiry after discovery for purposes of class certification. The Court will evaluate the merits of Plaintiffs' state law claims under the substantive law of the states in which each Plaintiff purchased the Yogurt—namely, Arizona, California, Florida, Illinois, Massachusetts, Missouri, New Jersey, New York, Pennsylvania, and Texas.

## B.   Legal Standard—Federal Rule of Civil Procedure 12(b)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for

---

[5] Plaintiffs conduct no choice-of-law analysis and do not appear to dispute the Defendants' conclusion the substantive law of the state where the Yogurt was purchased should control each Plaintiff's claims as well as those of the putative national and state subclasses. *See generally* Response [#41].

[6] *See, e.g., Bellew v. Ethicon, Inc.*, No. 2:13-cv-22473, 2014 WL 6913836, at *2 (S.D. W.Va. Nov. 24, 2014) (applying Arizona choice-of-law rules); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (applying California choice-of-law rules); *In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1496 (JBW), 07-CV-4505 (JBW), 2009 WL 2004540, at *12 (E.D.N.Y. July 1, 2009), *aff'd sub nom., Dean v. Eli Lilly & Co.*, 387 F. App'x 28 (2d Cir. 2010) (applying Florida choice-of-law rules); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008) *aff'd*, 612 F.3d 932 (7th Cir. 2010) (applying Illinois choice-of-law rules); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277–78 (D. Mass. 2004) (applying Massachusetts choice-of-law rules); *O'Shaughnessy v. Cypress Media, L.L.C.*, No. 4:13-cv-0947-DGK, 2015 WL 4197789, at *9 (W.D. Mo. July 13, 2015) (applying Missouri choice-of-law rules); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 450 (D.N.J. 2012) (applying New Jersey choice-of-law rules); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (applying New York choice-of-law rules); *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 167 (E.D. Pa. 2015) (applying Pennsylvania choice-of-law rules); *Browne v. World Christian Church*, No. A-99-CA-784-AA, 2001 WL 681256, at *3 (W.D. Tex. Apr. 5, 2001) (applying Texas choice-of-law rules).

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

### A.   Preemption

Defendants argue Plaintiffs state law claims are preempted by the Food, Drug & Cosmetic Act (FDCA) and FDA regulations because they seek to impose more stringent labeling requirements than those imposed by federal law. *See* Mot. Dismiss [#32] at 11–12; Reply [#46] at 4.

#### 1.   Legal Standard

In determining whether federal law preempts state law, Congressional intent is the paramount consideration. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987). Preemption occurs when (1) Congress enacts a federal law that explicitly preempts state law, (2) federal law is so comprehensive it occupies the legislative field leaving no room for supplementary state law, and (3) state law actually conflicts with federal law. *See id.* at 280–81. In considering preemption, the Court "start[s] with the assumption that the historic police powers of the States were not meant to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470 485 (1996) (internal quotations omitted). Accordingly, "[p]arties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013). This approach "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Lohr*, 518 U.S. at 485.

#### 2.   Statutory and Regulatory Framework

The FDCA empowers the FDA "to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 U.S.C. § 393(b)(2)(A)). The FDCA also explicitly

prohibits the "misbranding" of food in interstate commerce. 21 U.S.C. § 331(a). Section 343 enumerates under what conditions food is deemed to be misbranded. *Id.* § 343. For example, a food is considered misbranded if its labeling is "false or misleading in any particular." *Id.* § 343(a)(1). In 1990, Congress enacted the Nutrition Labeling and Education Act (NLEA), which amended the FDCA and aimed to "clarify and . . . strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538 (1990). Part of the NLEA's "purpose was to 'create uniform national standards regarding the labeling of food.'" *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1079 (N.D. Cal. 2013) (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008)).

The NLEA included a provision that expressly preempts any state or local "requirement for nutrition labeling of food that is not identical" to the requirements under the statute and its accompanying regulations. 21 U.S.C. § 343-1(a)(4)–(5). "[I]n the context of express preemption provisions, 'the term "requirements" . . . reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules.'" *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (citing *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 443 (2005)).[7] However, where state law requirements "effectively parallels or mirrors" requirements under the FDCA, there is no preemption. *See, e.g., Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Courts in this district 'have repeatedly refused to find preemption' where 'a requirement imposed by state law effectively parallels or mirrors the relevant sections of the FDCA]) (citations omitted)); *Ackerman v. Coca-Cola*

---

[7] According to the FDA, "not identical to" means the requirements "concerning the labeling of food . . . '(1) Are not imposed by or contained in the application provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4).

*Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) ("[C]laims under state laws that parallel the FDCA's requirements are not preempted."). Plaintiffs must navigate a "narrow gap" to avoid preemption; they must be suing for conduct that *violates* the FDA, but not *because* the conduct violates the FDCA. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). In other words, Plaintiffs' allegations must state a claim both for a violation of state law and for a violation of the FDCA.

Under the FDCA, a food is deemed misbranded if "it is intended for human consumption and offered for sale, unless its label bears nutrition information that provides . . . the amount of . . . sugars . . . in each serving size or other unit of measure." 21 U.S.C. § 343(q)(1)(D). Federal regulations promulgated by the FDA further require "[t]he declaration of nutrition information on the label" include "[a] statement of the number of grams of sugar in a serving . . . expressed to the nearest gram." 21 C.F.R. § 101.9(c)(6)(ii).[8] Compliance with the food labeling requirements under § 101.9(c)(6)(ii) is determined based on specific testing methodology described in § 101.9(g)(2). Section 101.9(g)(2) requires "[t]he sample for nutrient analysis . . . consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot." *Id.* § 101.9(g)(2). These "composites shall be analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' 15th ed. (1990) . . . or if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures." *Id.* Foods with labels declaring the amounts of sugars "shall be deemed to be misbranded under [21 U.S.C. § 343(a)] if the nutrient content of the composite is greater than 20 percent in excess of the value for that nutrient declared on the label." *Id.* § 101.9(g)(5).

---

[8] "Sugars content" is defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii).

In sum, the sugar content statements on the Yogurt's nutrition label violate the FDCA if they exceed that actual sugar content by more than 20 percent as determined using the twelve-sample testing methodology set forth in § 101.9(g)(2).

### 3. Application—Express Preemption

Defendants argue Plaintiffs' state law claims are preempted because they fail to allege the scientific testing conducted by *Consumer Reports* complied with the prescribed FDA testing methodology set forth in 21 C.F.R. § 101.9(g)(2). The Court agrees.

Every district court considering this issue has found "where, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted." *Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) (granting motion to dismiss claims based on alleged misrepresentation of protein content on product's Supplemental Facts section where laboratory reports attached the pleadings established the 12-sample method required by § 101.9(g)(2) was not followed); *see also Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *7–8 (E.D. Cal. Dec. 24, 2015) (denying motion to dismiss but holding "any adjudication of the claims on the merits other than by the 12-sample methodology as set forth in section 101.9(g) would be preempted by the FDA"); *Durnforfd v. Musclepharm Corp.*, No. 14-cv-413-HSG, 2015 WL 9258079, at *4 (N.D. Cal. Dec. 18, 2015) (granting motion to dismiss false labeling claims on grounds the plaintiff failed to allege that testing conducted in accordance with FDA-mandated methodology showed the defendant's nutrient content claims were false); *Clay v. Cytosport Inc.*, No. 15-cv-165 L (DHB); 2015 U.S. Dist. LEXIS 110447, at *9 (S.D. Cal. Aug. 19, 2015) (denying motion to dismiss but holding that "in order to prevail on these [nutrient content] claims, Plaintiffs will have to prove that

Defendant did not comply with the FDCA provisions" contained in § 101.9(g)(2)); *Bruaner v. MusclePharm Corp.*, No. 14-cv-8869-FMO, 2015 WL 4747941, at *9 (C.D. Cal. Aug. 11, 2015) (granting motion to dismiss claims based on a defendants failure to list all of the ingredients on a product's label where the plaintiff failed to allege that the testing upon which he relied was conducted in accordance with the FDA's 12-sample method); *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1313–14 (E.D. Cal. 2014) (granting motion to dismiss claims claim defendant's Honey Green Tea bottles did not contain the amount of antioxidants represented on their labels where plaintiff failed to allege the "independent testing by a laboratory retained by plaintiff's counsel" complied with FDA testing protocols); *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 480, 483 (D.N.J. 2013) (granting motion to dismiss claims defendant overstated the calorie count on the label of its diet ice cream bars where plaintiff failed to allege the "independent laboratory tests" complied with the proper methodology); *Vital v. One World Co.*, No. SACV 12-00314-CJC (MLGx), 2012 U.S. Dist. LEXIS 186203, at *15–16 (C.D. Cal. Nov. 30, 2013) (granting summary judgment for defendant on claim defendant overstated the magnesium and sodium content on labels of its coconut water product where plaintiffs did not provide evidence the report on which they relied was conducted in compliance with § 101.9(g)(2)).

Plaintiffs rely solely on the article published by *Consumer Reports* to substantiate their allegation the Yogurt contained "11.4 grams of sugar per serving on average," which they claim is nearly six times the amount stated on the Yogurt's nutritional label. SACC ¶ 1. However, Plaintiffs do not allege the *Consumer Reports* testing was conducted in accordance with the methodology set forth in 21 C.F.R. § 101.9(g)(2), but instead expressly plead that *Consumer Reports* used a different testing methodology. *See* SACC [#1] ¶ 1 ("in *six tests* conducted by the venerable consumer publication *Consumer Reports*") (emphasis added). Indeed, the article on which Plaintiffs rely

affirmatively states *Consumer Reports* "analyzed six samples of the [Y]ogurt from six different lots for sugar content." Mot. Dismiss [#32-6] Ex. B (Consumer Reports Article). This is a far cry from the FDA protocol requiring a composite of twelve subsamples taken from twelve randomly chosen shipping cases. Consequently, by their own allegations, Plaintiffs seek to impose liability on the Defendants based on a testing methodology that is more burdensome than[9] that provided under the FDCA. Plaintiffs "appear to have pleaded facts demonstrating preemption." *Mee*, 2015 WL 2251303, at *4.

In response, Plaintiffs argue the testing methodology used to support the false labeling allegation is not a pleading requirement, and the Court must accept as true allegations the Yogurt's label understated the sugar content for purposes of Rule 12(b) and decide whether the evidence supporting this claim is sufficient at a later stage in the proceeding. *See Clay*, 2015 U.S. Dist. LEXIS 110447, at *7 (finding defendant's argument plaintiff was required to plead the precise type of testing conducted "not appropriate for a motion to dismiss"). To hold otherwise, Plaintiffs argue, would create an "impossible-to-meet pleading requirement" because they could not obtain test results in compliance with FDA protocol absent formal discovery.[10]

---

[9] As explained in the seminal case on this issue, if the *Consumer Reports* testing was sufficient to show that the Yogurt was misbranded, Defendants "would face labeling requirements different those provided under the FDCA." *Vital*, 2012 U.S. Dist. LEXIS 186203, at *13. As the court explained:

> [b]y mandating that a composite be used to determine compliance, the regulation rejects the requirement that every individual product be labeled in compliance with [§ 343]. Instead, the *average* nutrient content of twelve products randomly selected from twelve different shipping cases is considered. This allows for some variation in the nutrient content of each individual product and shipping case. A regulation requiring each individual product or shipping case to be in compliance with [§ 343] would be much more stringent and impose a greater burden on companies.

*Id.* Testing only six samples from six lots does not account for the potential variation in nutrient content from product to product which is permitted by the FDA, and therefore imposing liability solely based on these tests would hold Defendants to a higher standard than required under federal law.

[10] Plaintiffs also argue their claims are not preempted because the protocol outlined in 21 C.F.R. § 101.9(g)(2) mandates of a method of testing compliance to be used by the FDA, but that nothing in the regulations requires a plaintiff in a private action to follow that methodology. Resp. [#41] at 8. This argument was rejected in *Vital*, *see* 2012 U.S. Dist. LEXIS 186203, at *15–16, and for the reasons contained therein, this Court also rejects Plaintiffs' argument they

The Court need not decide whether, in all cases, alleging the precise testing methodology is a pleading requirement because the SACC affirmatively alleges *Consumer Reports* did not follow the applicable protocols. Plaintiffs have not alleged any independent laboratory testing whatsoever, let alone any in compliance with § 101.9(g)(2), but have instead solely relied on the *Consumer Reports* analysis known not to have followed FDA protocols. These allegations are not sufficient because, "if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA." *Salazar*, 74 F. Supp. 3d at 1313. Courts have consistently dismissed similar food mislabeling claims on a defendant's Rule 12 motion where the testing relied upon by Plaintiffs clearly suggests FDA mandated testing protocols were not followed or where Plaintiffs have specifically pled methodology that would impose a more burdensome requirement. *See, e.g.*, *Smith*, 2014 WL 9434768, at *8; *Durnford*, 2015 WL 9258079; at *4 n.2; *Braunder*, 2015 WL 4747941, at *9; *Mee*, 2015 WL 2251303, at *4. The Court sees no reason to deviate here.

Finally, Plaintiffs appear to request a special exemption from the applicable pleading requirements, arguing that to dismiss the SACC at this juncture would be unfair because they could not properly test the Yogurt themselves without formal discovery or without Defendants' cooperation. This argument has no basis. The parties are already in discovery and have been for months. *See* Scheduling Order [#16] at 1 ("Fact discovery is to commence on August 25, 2015 and will be completed by May 25, 2016 . . . ."). Plaintiffs have had ample time to conduct the discovery necessary to determine whether they could in good faith claim the Yogurt had 11.4 grams of sugar per serving based on testing in compliance with the prescribed FDA testing protocols, but instead have relied on the *Consumer Reports* sampling methodology they have every reason to believe was

---

are entitled to impose liability under state law using testing methodologies that are different than what is contained in § 101.9(g)(2).

inconsistent with what they would ultimately be required to prove under the FDCA.[11] The Court finds no reason to excuse Plaintiffs from pleading a plausible violation of the FDCA—which they must do to avoid preemption—on the grounds Plaintiffs would have been able to plead compliance with the FDA but for Defendants' failure to provide them with discovery.

Because Plaintiffs allege the Yogurt's actual sugar content per serving was determined by testing that was not in compliance with the twelve-sample methodology set forth in § 101.9(g)(2), the SACC seeks to impose liability inconsistent with the FDCA. Thus Plaintiffs' state law misbranding claims are preempted. Plaintiffs' state law claims are all based on the allegation Defendants understated the sugar content on the Yogurt's nutrition label, and thus no claim may proceed. However, as have all other courts considering the issue, this Court will dismiss the SACC without prejudice and afford Plaintiffs leave to amend to allege compliance with § 101.9(g)(2). *See, e.g., Mee*, 2015 WL 2251303, at *4 n.7; *Burke*, 983 F. Supp. 2d at 483.

### 4. Spoliation of Evidence

By requesting the Court delay an evaluation of this issue until after discovery, Plaintiffs are implying they will be able support their claims with test results that do comply with § 101.9(g)(2). *See Cytosport*, 2015 U.S. Dist. LEXIS 110447, at *9 ("[I]n order to ultimately prevail on these claims, Plaintiffs will have to prove that Defendant did not comply with the FDCA provisions listed above."). However, in their Response, Plaintiffs accuse Defendants of destroying all existing stock

---

[11] Plaintiffs were undoubtedly on notice of the preemption issues currently before the Court. Plaintiffs' lead counsel litigated this very issue before a federal district court in California in *Mee v. I A Nutrition*. The court in that case ultimately dismissed the pleadings on preemption grounds and required the plaintiffs to "amend to allege compliance with § 101.9(g)(2)." *Mee*, 2015 WL 2251303, at *4. Defendants also raised this issue in their Initial Conference Brief filed on June 16, 2015. *See* Defs.' Initial Conference Brief [#6] at 5, 7 ("All [Consumer Reports] chose to disclose in the article about its testing methodology was that it tested six samples from six different lots. And this limited disclosure is enough to confirm that Consumer Reports did not adhere to the regulatory standards of the applicable enforcement authority—the FDA . This is no small matter.").

of the Yogurt after this litigation began in violation of their duty to preserve evidence, and as a result, claim "the testing protocol [required to avoid preemption] can no longer be met by anyone." Resp. [#41] at 8. Plaintiffs ask this Court for an order "requiring Defendants to . . . produce any test results concerning the Yogurt's sugar content already in Defendants' possession without further delay," and alternatively to "allow Plaintiffs to brief the spoliation issue and the favorable inference to which Plaintiffs are entitled to as a result of the spoliation." *Id.* at 11.

As to the former request, Defendants are already under an obligation to produce relevant documents requested by Plaintiffs, and the Court fails to see how any test results that were not conducted in compliance with FDA protocols would be relevant on this issue. *See Vital*, 2012 U.S. Dist. 186203, at *17 ("Because One World's internal testing is not conducted in accordance with the code section, it is not relevant on this point."). As to the latter request, considering the agreed-upon discovery window, the Court finds that it is in the interest of promoting a just and efficient outcome for both parties, *see* 28 U.S.C. § 1407, to address whether Plaintiffs will ultimately be able to acquire test results in compliance with FDA standards now, rather than waiting until after the parties spend the time and incur the expense of briefing class certification and summary judgment motions.

The Court encourages Plaintiffs to attempt to obtain the test results from a third party or otherwise conduct testing in compliance with FDA regulations themselves[12] such that they can in good faith file a Third Amended Consolidated Complaint that pleads a plausible violation of the FDCA. However, if Plaintiffs are unable to obtain such results, or otherwise find it "impossible to currently conduct the protocol" required due to the alleged destruction of the Yogurt by

---

[12] Defendants claim not be in in possession of any Yogurt samples but remind the Court Plaintiffs represented in the initial conference they had "retained some [Yogurt] for testing purposes" and that they "have some testing that's been done already." *See* Reply [#46-1] Ex. A at 10:9–10, 10:15–17.

Defendants—and, in turn impossible to plead claims that are not preempted—Plaintiffs are welcome to address the spoliation arguments that would inevitably arise if the litigation were permitted to proceed.

## Conclusion

For the reasons stated herein, the Court finds Plaintiffs' state law claims are preempted by federal law and thus subject to dismissal. The Court will grant Plaintiffs leave to amend the SACC to remedy the pleading deficiencies. The Court will address Defendants' remaining arguments pursuant to Rule 12(b) and Rule 12(f) should they choose to re-file these motions.

Accordingly,

IT IS HEREBY ORDERED that Defendant Whole Foods Market, Inc.'s Motion to Dismiss [#31] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [#32] is GRANTED and Plaintiffs' Second Amended Consolidated Complaint is DISMISSED as preempted with leave to amend;

IT IS FURTHER ORDERED that Plaintiffs shall file a Third Amended Consolidated Complaint no later than March 4, 2016; and

IT IS FINALLY ORDERED that Defendants' Motion to Strike [#33] is DISMISSED as moot.

SIGNED this the 12th day of February 2016.

*[signature]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE